UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

          Plaintiff,

v.

Eddie Lee Pope,

          Defendant.

Case No. 3:23-cr-301

MEMORANDUM OPINION
AND ORDER

## I.   INTRODUCTION

Defendant Eddie Lee Pope[1] moves to suppress evidence obtained during and after a traffic stop which led to his arrest, (Doc. No. 9), and to dismiss this case for lack of personal and subject matter jurisdiction. (Doc. No. 10). The government filed an omnibus response to Pope's motions, (Doc. No. 12), and Pope filed reply briefs in support of those motions. (Doc. Nos. 69 and 70).

Pope previously raised the issues contained in these motions in Case Number 3:20-cr-795.[2] I dismissed the indictment in that case without prejudice because more than 70 nonexcludable days had passed under the Speedy Trial Act. (Doc. No. 66). For the reasons stated below and in my earlier orders addressing these arguments, I deny both of Pope's motions.

---

[1] Pope is proceeding *pro se* in this case, with the Office of the Federal Public Defender appointed as stand-by counsel. (*See* non-document entry dated June 12, 2023).

[2] For the sake of completeness, the motions, briefs, orders, opinions, and other miscellaneous filings from the initial case have been refiled on the docket in this case. I will refer to those earlier filings by their docket number in this case.

## II. Motion to Suppress

I previously summarized the facts underlying Pope's motion to suppress:

On June 4, 2021, I held an evidentiary hearing regarding Pope's motion to suppress, during which the government presented testimony from Trooper Ryan Noblet of the Ohio State Highway Patrol, as well as evidence in the form of a recording from the dash camera of Noblet's cruiser.

Just after midnight on October 14, 2020, Noblet was parked in his cruiser in the crossover on State Route 15, near mile post 3 in Wyandot County, Ohio, when he observed a vehicle heading eastbound. (Doc. No. 33 at 14). The vehicle was traveling at a rate below the posted speed limit and, as the car drove past the crossover, Noblet observed the driver (subsequently determined to be Pope[3]) was leaning back behind the vehicle's B-pillar.[4] (*Id.*). Noblet pulled out from the crossover and followed the vehicle for approximately two miles. (*Id.* at 15-16). During this time, Noblet also observed the vehicle swerving within its lane. These things – traveling below the speed limit, the driver leaning back behind the B-pillar, and the swerving within the line – in combination with the time of night, led Noblet to suspect the driver of the vehicle was distracted or might be operating the vehicle while intoxicated. (*Id.* at 17).

Noblet continued following the vehicle. He then observed the driver's side tires cross over the yellow fog line and, later, the passenger side tires traveling on the white fog line in the other lane. (*Id.* at 19-20; *see also* Doc. No. 37 at 10). Noblet stopped the vehicle and provided the license plate number from the vehicle to a dispatcher. (Doc. No. 33 at 21). The dispatcher indicated the license plate was registered to a GMC Yukon; the vehicle Noblet had pulled over was a Chevy Malibu. (*Id.*).

Noblet approached the vehicle and Pope provided his Michigan driver's license. (*Id.* at 22). Noblet noticed an odor of marijuana coming from the car and observed marijuana cigarettes in the center console. (*Id.*). Noblet instructed Pope to step out of the vehicle and patted him down. (*Id.* at 23).

While patting him down, Noblet felt something near Pope's groin, in front of his genitals. (*Id.*). Pope told Noblet it was a colostomy bag. This claim struck Noblet as "odd" because, in his experience, colostomy bags typically were located on the patient's abdomen, and because the bag contained a hard substance which "[f]elt like ice . . . [except that] it was not cold." (*Id.*).

---

[3] (Doc. No. 33 at 22).

[4] The B-pillar is "either one of two support posts that connect a vehicle's roof to its body at the rear of the front door." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/B-pillar (last visited Sept. 13, 2021).

2

>Noblet then prepared to conduct a field sobriety test. At that point, Pope asked Noblet what he was doing, and then began running away from the road toward a wooded area nearby. (*Id.* at 26-27). After a short period, officers apprehended Pope. When they searched Pope again, he did not have any contraband on him; nor did the officer find the object Pope earlier had claimed was a colostomy bag. (*Id.* at 28-29). But the officers did locate a "plastic bag . . . [containing] a white crystalized substance" near a fence Pope had climbed while fleeing the traffic stop.[5] (*Id.* at 29).
>
>It ultimately was determined that the package contained over 400 grams of methamphetamine. (Doc. No. 1-1 at 3). Pope subsequently was indicted by a federal grand jury on one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Doc. No. 8).

(Doc. No. 37 at 2-3).

I then concluded Pope failed to meet his burden to show the traffic stop or subsequent seizure of the methamphetamine violated his Fourth Amendment rights and denied his motion to suppress.

Pope again moves to suppress the evidence obtained following the October 14, 2020 traffic stop. (Doc. Nos. 9 and 9-1). He again argues there was no probable cause to support the traffic stop and that Noblet's explanation for the stop lacks credibility. (Doc. No. 9-1 at 3-6). He also propounds positions on the facts underlying the traffic stop and his subsequent arrest which are at odds with the facts presented during the June 4, 2021 suppression hearing. And he attempts to introduce new "facts," such as his contention that Noblet punched him in the face immediately before Pope fled into the nearby woods, despite not having made any mention of these allegations previously. (*See* Doc. No. 9-1 at 2).

The government argues I may deny Pope's motion based upon the law-of-the-case doctrine, which "generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," and which "expresses the practice of courts generally to refuse to reopen what has been decided." *Musacchio v. United States*,

---

[5] Pope was cited for committing a marked lanes violation pursuant to Ohio Revised Code § 4511.33(a)(1), as well as for distracted driving in violation of § 4511.991. (Doc. No. 33 at 42).

577 U.S. 237, 244-45 (2016) (citations and internal quotation marks omitted). The Sixth Circuit has held that this doctrine may be applied to prior rulings involving the same defendant following a reindictment because "[o]therwise[] a court would be required to rule *de novo* on every issue previously decided in a prior proceeding." *United States v. Todd*, 920 F.2d 399, 404 (6th Cir. 1990) (holding courts may "recognize and enforce prior rulings based upon" the law-of-the-case doctrine following a mistrial).

I previously viewed the dash cam recording and observed Noblet while he testified regarding the events leading up to the traffic stop. I concluded the recording demonstrated that the tires of Pope's vehicle traveled over the solid edge line, providing probable cause for the traffic stop, and I found Noblet's testimony "credible and consistent with the events recorded by his vehicle's dash camera" after observing him testify. (Doc. No. 37 at 4). Pope's disagreement with those conclusions is not an appropriate basis for reconsidering them.[6]

Pope's motion fails for a separate, related reason. His motion in effect is a motion to reopen the suppression hearing. The Sixth Circuit has held district courts should be "extremely reluctant" to reopen suppression hearings, particularly where, like here, the defendant has not offered any credible explanation for his failure to present the new issues or facts earlier. *United States v. Pittman*, 816 F.3d 419, 424 (6th Cir. 2016) (citation and internal quotation marks omitted). Pope does not offer any explanation why he did not previously mention his allegation that Noblet punched him during the traffic stop, and it is difficult to imagine that Pope would have forgotten such a dramatic

---

[6] The government argues I may deny Pope's motion to suppress and his motion to dismiss pursuant to the doctrine of collateral estoppel. (Doc. No. 12 at 3-4). But I am not persuaded that doctrine applies here. Courts to consider the question have held that a prior ruling on a motion to suppress evidence did not automatically preclude consideration of the motion following reindictment because the resolution of the suppression motion was not essential to the ultimate disposition of the first case, which was dismissed pursuant to the Speedy Trial Act. *See, e.g., United States v. Koerber*, 10 F.4th 1083, 1101, 1102 (10th Cir. 2021); *Loera v. United States*, 714 F.3d 1025, 1030 (7th Cir. 2013).

4

event until just recently.[7] I conclude he has not presented any basis to reopen the suppression hearing.

Therefore, I deny his request for a hearing and his motion to suppress. (Doc. No. 9).

### III. MOTION TO DISMISS

Pope also moves to dismiss this case "for lack of personal & subject-matter jurisdiction." (Doc. No. 10). He claims methamphetamine is not appropriately considered a controlled substance, and that the federal government does not have "standing" to prosecute him for this offense because he is not a "federal citizen" and was not on federal land at the time of the offense. (*Id.* at 2-3).

Pope has raised, and I have rejected, these arguments before. (*See* Doc. No. 28 at 2-5; Doc. No. 37 at 6-7). He has not identified any change in law or any new facts which might entitle him to relief. Therefore, I deny his motion to dismiss for the reasons I previously stated. *See Todd*, 920 F.2d at 404.

### IV. CONCLUSION

For the reasons set forth above, I deny Pope's motions. (Doc. Nos. 9 and 10).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

[7] Pope has asserted he did not have time to review one of the video recordings of the traffic stop, though he acknowledges the government provided the recording to him in discovery before he filed his initial motion to suppress, filed on February 24, 2021.